## THE PEOPLE *ex rel.* John J. Horan

### *v.*

## FREDERICK S. BAIRD *et al.*

#### *Filed at Ottawa January 19, 1897.*

1. ELECTIONS—*members of the legislature are not State officers.* The term "State officers," as used in section 10 of the Ballot act, (Laws of 1891, p. 109,) is intended to embrace only those officers of the State who are elected, on a general ticket, by the electors of the entire State, and does not include members of the legislature.

2. SAME—*State board of review cannot decide contested nominations for member of the legislature.* The Attorney General, Auditor and Secretary of State are authorized by section 10 of the Ballot act to decide contested nominations for State officers only, and have no authority to decide a legislative contest.

3. SAME—*Chicago election commissioners may decide contested nominations for legislature in city districts.* The board of election commissioners of the city of Chicago is the proper tribunal, under the proviso to section 10 of the Ballot act, to decide contested nominations for member of the legislature in a senatorial district which lies wholly within the city.

ORIGINAL petition for *mandamus.*

PLINY B. SMITH, for relator.

WILLIAM W. WHEELOCK, (MORAN, KRAUS & MAYER, of counsel,) for appellees.

Per CURIAM: This was a petition for *mandamus* to compel the election commissioners of the city of Chicago to place the name of the relator, John J. Horan, upon the official ballot, to be voted for as a candidate for the legislature in the First Senatorial district, which is situated wholly within the city of Chicago.

The relator was nominated by a republican convention in the First Senatorial district as a candidate for member of the General Assembly, and filed his nomination papers with the Secretary of State. The defendants, William G. Laub and Charles A. Wathier, were also nominated by

a republican convention in the district for the same office, and filed their nomination papers with the Secretary of State. Each of the contending parties also filed nomination papers with the county clerk of Cook county. The State board of review, consisting of the Secretary of State, Auditor and Attorney General, decided that the relator, John J. Horan, was properly nominated and entitled to have his name on the official ballot. The election commissioners of the city of Chicago, upon a hearing of the claims of the respective candidates, decided and determined that Laub and Wathier were the regular nominees of the republican convention of the district, and determined their names should be placed on the official ballot and refused to place the name of relator thereon.

The question, and the only question, which we are called upon to determine from the record before us is, whether, under the statute, the State board is the proper tribunal to determine who was the regular nominee of the republican party of the First Senatorial district, or whether the election commissioners of the city of Chicago are the proper tribunal to determine the controversy.

Section 7 of the Australian Ballot law, passed in June, 1891, (Laws of 1891, p. 109,) provides: "Certificates of nomination and nomination papers for the nomination of candidates for office to be filled by the electors of the entire State or any division or district greater than a county, shall be filed with the Secretary of State. * * * All other certificates for the nomination of candidates shall be filed with the county clerk of the respective counties: * * * *Provided*, that certificates of nomination and nomination papers for the nomination of candidates for the offices in cities, villages and incorporated towns, and for town offices in counties under township organization, shall be filed with the clerks of the towns, cities, villages and incorporated towns."

Section 10 of the act is as follows: "The certificates of nomination and nomination papers being so filed, and

being in apparent conformity with the provisions of this act, shall be deemed to be valid unless objection thereto is duly made in writing. Such objections or other questions arising in relation thereto in the case of nomination of State officers shall be considered by the Secretary of State and the Auditor and Attorney General, and the decision of the majority of these officers shall be final. Such objections or questions arising in the case of nominations for officers to be elected by the voters of a division less than the State and greater than a county shall be considered by the county judges of the counties embraced in such division, and the decision of a majority of these officers shall be final. Such objections or questions arising in the case of nominations of candidates for county officers shall be considered by the county judge, county clerk and State's attorney for such county, and the decision of a majority of said officers shall be final. Objections or questions arising in the case of nominations of city, town or village officers shall be considered by the mayor or president of the board of trustees, and the city, town or village clerk, with whom one alderman or trustee thereof, as the case may be, chosen by lot, shall act, and the decision of a majority of such officers shall be final. Such objections arising in the case of nominations of town officers shall be considered by the board of auditors of such town, and the decision of a majority of such auditors shall be final. In any case where such objection is made, notice shall forthwith be given to the candidates affected thereby, addressed to their places of residence as given in the nomination papers, and stating the time and place when and where such objections will be considered: *Provided*, that in cities, towns or villages having a board of election commissioners such questions shall be considered by such board, and its decision shall be final."

It will be observed that the first clause of section 10 provides that questions in relation to the nomination

of State officers shall be considered by the Secretary of State, Auditor and Attorney General, and it is claimed by the relator that a member of the legislature is a State officer, and hence that board was the proper one to determine who was nominated in the First Senatorial district. It is true that members of the legislature enact laws for the entire State, and in a general sense might be regarded as State officers; but they are severally elected in districts by the voters of the districts, and not by the electors of the entire State, and we do not regard them as State officers in the sense that term is used in the section of the act. We think the term "State officers," as used in the statute, was intended to embrace those officers of the State who are elected on a general ticket by the electors of the entire State, and those alone. If, then, a member of the legislature is not to be regarded as a State officer as that term is used in the statute, and as the Secretary of State, Auditor and Attorney General are only authorized to pass upon contested nominations of State officers, it follows that the decision made by that tribunal in regard to relator's nomination was a nullity.

The First Senatorial district is situated wholly within the city of Chicago, and it is less than a county. By section 7, *supra*, the nomination papers for the district were required to be filed with the county clerk. The first part of the section requires nomination papers, when the office is to be filled by the electors of the entire State or a district greater than a county, to be filed with the Secretary of State, and the next clause provides that all other certificates shall be filed with the county clerk of the respective counties. This clause includes the Senatorial district in question. Why should the papers be filed with the county clerk if they were to be passed upon by the Secretary of State, Auditor and Attorney General? Upon an examination of section 10 of the statute (and it is the only section of the statute relied upon by relator) it will be seen that it makes no provision whatever for the set-

tlement of a contest over a nomination in a district like the First Senatorial district until the proviso at the foot of the section is reached, which declares: "*Provided,* that in cities, towns or villages having a board of election commissioners such questions shall be considered by such board, and its decision shall be final." "Such questions" refers to a contest over a nomination like the one under consideration, and we think the proviso was intended to confer authority to act, in a case like the First Senatorial district, on the board of election commissioners. Where a Senatorial district is composed of one county or less than a county, and the Election Commissioners act has not been adopted in such county or part of a county, it is difficult to determine from the statute in question what tribunal is empowered to settle a contested nomination. But that fact has no bearing on the question involved here.

The writ of *mandamus* will be denied.

*Mandamus denied.*