## M. G. MILLER v. GEORGE A. CLARK.

### No. 11,919.   (62 Pac. 664.)

1. AUSTRALIAN-BALLOT LAW—*Contested Nominations—Decision of State Officers Final.* The special tribunal created by section 10 of chapter 129 of the Laws of 1897 (Gen. Stat. 1897, ch. 52, § 46; Gen. Stat. 1899, § 2641), known as the Australian-ballot law, consisting of the secretary of state, auditor, and attorney general, is given power to inquire, after objections made, into the regularity of nomination papers filed with the secretary of state, and to consider other questions arising in relation thereto, upon notice to the candidates affected. The statute provides that a decision by a majority of said officers shall be final. *Held,* that after a

Miller v. Clark.

hearing before such officers and a finding made by them that one of two candidates for state senator was regularly nominated by a convention which divided into two parts, each naming a candidate, their decision will not be disturbed by the courts, in the absence of bad faith or arbitrary conduct showing wrongful acts amounting to fraud on the part of said officers.

2. JURISDICTION— *Statutory Regulation.* When a right given is solely of legislative creation, and jurisdiction over it is limited to a particular tribunal and specific remedies provided for its enforcement, the jurisdiction and remedy can be exercised and pursued only before such tribunal, and in the mode that the statute requires.

3. AUSTRALIAN-BALLOT LAW— *Contesting Candidate Estopped.* A candidate cannot adopt the benefits conferred upon him by the Australian-ballot law, and at the same time repudiate that part of the statute which has set up a board of officers with jurisdiction to determine finally the regularity of his nomination in case of a contest.

4. ———— *Case Overruled.* The case of *Sims v. Daniels,* 57 Kan. 552, 46 Pac. 952, so far as it denies to such tribunals final power to decide the questions referred to in the first paragraph of this syllabus, is overruled.

Original proceeding in mandamus.  Opinion filed November 10, 1900.  Writ denied.

STATEMENT.

WITHIN the time prescribed by law M. G. Miller and F. W. Sponable each filed, in the office of the secretary of state, a certificate of nomination, in due form, for the office of senator of the sixth senatorial district, which is composed of the counties of Miami and Johnson. Each of said candidates filed his objection with the secretary of state against the placing of the name of the other on the official ballot. There was a hearing had before the secretary of state, auditor, and attorney-general, and a decision made by them to the effect that the name of F. W. Sponable should be printed on the official ballot as the republican candi-

date for senator in said district, and that the name of M. G. Miller should be omitted therefrom.

The questions which arose before the board of officers named related to the regularity of a nominating convention held on July 28, 1900, at Olathe, Kan., for the purpose of nominating a republican candidate for said office, each county being represented by twelve delegates. After the delegates met a motion was made to adjourn to August 8, which the chairman declared carried. The Miami county delegation cast thirteen votes in favor of the motion to adjourn, and the chairman of the Johnson county delegation announced twelve votes against it. After this motion had been declared carried the Miami county delegation, with the exception of one of their number, left the convention, and thereupon those remaining nominated F. W. Sponable as the candidate for senator. On August 8 the twelve delegates from Miami county again met at Olathe, pursuant to the adjournment which they claimed had been regularly had, and, with one other person whom they recognized as a delegate from Miami county, proceeded to a permanent organization and nominated M. G. Miller as the republican candidate for state senator.

This is an action of mandamus brought originally in this court to compel the secretary of state to certify the name of M. G. Miller to the county clerks of Miami and Johnson counties as the regularly-nominated candidate. At the hearing the regularity of the nomination seemed to depend on the question whether the motion to adjourn, made and declared carried on July 28, had been properly adopted by a majority of the legally-qualified delegates authorized to sit in the convention. Other questions were discussed by counsel, but this one was considered the most important.

*Parker & Hamilton*, for plaintiff..

*A. A. Godard*, attorney-general, and *J. S. West*, for defendant.

The opinion of the court was delivered by

SMITH, J.: The first and important question to be considered is whether or not, under the facts as they have been made to appear, this court will enter into an investigation of the controverted matters presented, involving the regularity of the proceedings had in the convention at Olathe, and decide which candidate was nominated according to the usages of the party and in conformity to the rules of parliamentary law applicable to deliberative bodies. The tribunal created by the statute, consisting of the secretary of state, auditor, and attorney-general, after considering testimony offered by the interested candidates on both sides, made findings of fact and reached the conclusion that Mr. Sponable had been regularly nominated.

We are asked to overturn this decision, not upon any allegation or proof of fraud or arbitrary action upon the part of the secretary of state and his associates, but solely on the ground that their conclusion 1. Decision of state is based on a misapplication of the rules officers final. of parliamentary law and disregard of usages and party customs which have long prevailed in the calling of political conventions and in the conduct of their proceedings. We are fully convinced that this court ought not to ignore the determination arrived at by the tribunal mentioned, which is endowed by law with power to pass on such questions as the relator has attempted to have us decide.

Chapter 129 of the Laws of 1897 (Gen. Stat. 1897, ch. 52, art. 4; Gen. Stat. 1899, §§ 2632–2665), as

amended by chapter 17 of the Special Session Laws of 1898, regulates the·manner of holding elections, the nomination of candidates, and the printing and distribution of ballots. It provides a complete method unknown to the common law, and introduces what is known as the Australian-ballot system, which, with slight modifications, has been adopted in nearly all the states of the union.

Section 10 of the act of 1897 (Gen. Stat. 1897, ch. 52, § 44; Gen. Stat. 1899, § 2641) provides that after nomination papers have been filed in apparent conformity to the law they shall be deemed valid unless objection is made in writing within three days thereafter. In the case of state officers or others to be elected by the voters of a division less than a state or greater than a county, the objections are to be passed upon by the secretary of state, auditor, and attorney-general, and a decision of a majority of these officers is made final. It will be noted that the state officers named who are to act in such cases are not only vested with jurisdiction to pass on the regularity of the nomination papers, but additional power is given them to consider "other questions arising in relation thereto." Notice is required to be given to the candidates interested when the hearing will be had. It is plain that these officers are authorized under this statute to consider just such questions as we are now called on to decide, and in express language the legislature has said that their decision shall be final.

It is a cardinal rule that when a right given is solely and exclusively of legislative creation, and does not derive existence from the common law or from rules prevailing in courts of equity, and jurisdiction of it is limited to particular tribunals, and specific, peculiar remedies

2. Jurisdiction—statutory regulation.

are provided for its enforcement, the jurisdiction and remedy can be exercised and pursued only before the tribunals and in the mode the statute has provided. (Suth. Stat. Const. § 399; *Woodworth v. Bowles,* 61 Kan. 569, 60 Pac. 331.)

Before the introduction of what is known as the Australian-ballot system the election laws of the state did not give public control over the ballots until they were deposited by the voters, and any candidate might distribute among the electors any form of ballot which he saw fit. Any person might be a candidate for office without a previous nomination. The law mentioned has changed this, and now the voter is not only completely protected in the secrecy of his ballot and with freedom from interference when casting it, but the candidate is benefited by having his name printed on an official ballot containing the names of those legally entitled to contest for the office, whose right so to do depends on the observance of certain statutory requirements.

When the contestants for state senator were before the convention of delegates from Miami and Johnson counties for nomination, each knew that his recognition as a candidate depended upon his name appearing on the official ballot. Hence each filed a certificate with the secretary of state showing his selection as a

3. Contesting candidate estopped. nominee of the party. It was not compulsory on either one to accept a nomination, but having done so they cannot deny the obligatory force of the terms imposed by the election law, and they must take and abide by the conditions contained in the statutes along with the benefits conferred. They cannot be permitted to adopt that part of the statute which is beneficial and repudiate other parts of the same law imposing limitations which they

may claim to be burdensome. If there are disadvantages in the law to which they do not desire to subject themselves, they must disavow all protection granted by not appearing as candidates. It may be answered that the candidate can have no option, but is compelled to submit to the terms and conditions of the one statute governing nominations and elections, and having no freedom of choice he ought not to be concluded by pursuing the only course open to him. This objection is met, however, by the fact that no citizen is compelled either to seek or accept a nomination or an election to office. If he is dissatisfied with the requirements of the law prescribing who shall finally determine the regularity of his selection as a nominee, he must not make himself a party to a contest before such tribunal.

This is but an application of a familiar rule, well settled in the law of contracts and agency, and equally in force where new statutory rights are given and a specific tribunal created to pass on them, not provided for at common law. (Sedg. Constr. Stat. & Const. Law, 343; *Chandler v. Hanna,* 73 Ala. 390; *Dudley v. Mayhew,* 3 N. Y. 9; *McIntire and wife v. Western N. C. Railroad Co.,* 67 N. C. 278; Broom, Leg. Max. 473.)

We do not hold, however, that if the action of the officers specially designated to pass on the merits of such a controversy was induced by bad faith, or was the result of arbitrary acts showing wrongful conduct amounting to fraud, or their findings resulted in personal benefit to themselves, equity would not interpose to prevent a candidate from being thus wronged, or that the remedy by mandamus, sought to be employed in this case, might not be invoked.

In the case of *Sims v. Daniels,* 57 Kan. 552, 46 Pac. 952, it appeared that the republican party of Wyan-

Miller v. Clark.

4. Case overruled.

dotte county divided itself into two factions, each claiming to be the regular organization, and each nominating candidates. John T. Sims and other nominees for the various county offices to be filled that year brought an action of mandamus against the county clerk to compel him to place their names on the official ballot, the clerk having theretofore recognized the nominees of the other faction of the party as regular candidates and decided that they alone were entitled to a place on the ticket. A majority of this court held that the county officers whose duty it was to consider objections to certificates of nomination, and nomination papers, had no power or authority to determine which of the two opposing factions was the true representative of the party, nor to exclude the candidates of either faction from appearing on the official ballot after the nominations had been regularly certified to the county clerk in the manner pointed out by law.

Since that decision, however, chapter 17 of the laws of the special session of 1898 has gone into effect, providing "that the name of not more than one nominee for each office to be filled at the election shall be placed in any one column on the ballot." (Gen. Stat. 1899, § 2645.) We conclude, from reading the opinion in the Sims case, that the amendment just mentioned, had it been in force at the time, would not have changed the conclusion reached by the majority of the court, which was in substance that the special tribunal created to determine such questions (consisting in that case of the county clerk, clerk of the district court, and county attorney) could not make a final decision which would be conclusive upon the courts. The power conferred by the Australian-ballot law on the county officers named is the same as that

given to the secretary of state, auditor and attorney-general in cases where the nomination of a state senator is in question; that is, to consider "such objections, or other questions arising in relation thereto, . . . and a decision of a majority of these officers shall be final."

The court, in the Sims case, based its conclusion upon the fact, among others, that the tribunal designated in the law might abuse its powers; that in a large percentage of elections the officers appointed to pass on the nominations are themselves candidates before the people at the election and directly interested in the result, and therefore in the determination of the questions presented to them; that it is to their interest to avoid factions within their own party, and to cause divisions and discord in the ranks of their opponents; that a final decision by such officers would tend to the domination of machine politicians. The power of the legislature to constitute the tribunal and make its conclusions decisive is not discussed in the Sims case except in the general manner above indicated. We do not agree with the majority of the court in the result there reached on the proposition stated. The legislature has placed the jurisdiction to decide objections to nomination papers "and other questions arising in relation thereto" with a specially constituted board of officers, and made its determination final, on a hearing after notice.

The case of *Chapman v. Miller et al.*, 52 Ohio St. 166, 39 N. E. 24, arose over the decision of the state supervisor of elections (on the failure of the deputy state supervisors to agree), in determining that candidates nominated by one faction of the people's party of Mercer county, Ohio, should be placed on the official ballot for county offices. The statute in that state,

like ours, provides: "Such objections or other questions arising in the course of nominations of candidates for county offices . . . shall be considered by the deputy state supervisors of the county . . . and their decision shall be final."

In case of their disagreement the same authority is given to the state supervisor. The court, in passing on the question, at page 176, said:

"It will be noticed that the decision of the board of deputy supervisors, as well as the decision of the district or circuit board, is final. Also, that the decision of the state supervisor is final, whether made as to candidates for state officers or presidential electors, in the first instance, or county, district or circuit officers, upon submission to those boards. The statute provides that the questions shall be summarily decided, and that the decision shall be final. This necessarily excludes the jurisdiction of the court of common pleas as to the subject-matter, and it is clear that the judge of the court of common pleas was without jurisdiction, and that his order granting the injunction was utterly void and of no effect, and furnishes no excuse for the refusal to obey the order of the state supervisor of elections." (See, also, *In re Redmond*, 25 N. Y. Supp. 381.)

To say that the board of state officers is liable to abuse its powers and discharge its duties with selfish ends, and that the influence of party bosses may be augmented, is an argument which should be made to the legislature, for on that body all responsibility for the law must rest. In his dissenting opinion in the Sims case Mr. Justice Johnston answered the argument of the majority of the court, and we think his reasoning is more satisfactory than that employed to support the opposite view.

It is objected that the state officers constituting the tribunal mentioned are clothed with judicial power,

from which there is no appeal, and therefore that the legislature has created a court not named in the constitution and not inferior to the supreme court. It may be conceded that this tribunal is endowed with *quasi*-judicial power. It is important that it act expeditiously, and to permit appeals or proceedings in error to be taken from its decisions would often defeat the purpose of its creation. The right of appeal is not an inherent one. Such right did not exist at common law, and has always been statutory. The legislature may, within constitutional limits, regulate the mode of procedure and prescribe the acts that must be done by a party who desires to perfect an appeal. The subject is legislative, and the discretion of the legislature cannot be controlled by the courts, although the latter may adjudge enactments which may violate the constitution to be void. (Elliott, App. Proc. §§ 75, 76, 354.)

A judgment denying the writ of mandamus prayed for was rendered on October 16, 1900, but for want of time no opinion was then written. This opinion is in pursuance of the judgment heretofore rendered.