HENRY J. ALLEN v. J. R. BURROW.
No. 14,011. (77 Pac. 555.)

SYLLABUS BY THE COURT.

1. ELECTIONS—*Provision for State Contest Board Upheld—Case Affirmed.* The provision of the Australian-ballot law creating a special tribunal for the settlement of disputes regarding nominations for public office, and making its decisions final, is not unconstitutional as granting judicial powers to executive officers, or as impairing the original jurisdiction of the supreme court. The case of *Miller v. Clark*, 62 Kan. 278, 62 Pac. 664, is affirmed.

2. —————— *Determination of Contest Board Final unless Prior Corrupt Agreement be Shown.* A dispute over which of two persons is the regular nominee of a political party for a public office can ordinarily be settled only by the special tribunal to which the statute commits the determination of such questions, but if it be established that a majority of the members of such tribunal have entered into a corrupt agreement with one of the parties to give him the decision, regardless of the merits of the case, the courts will take jurisdiction of the controversy, and decide it, in a proceeding in mandamus to compel the certification of the proper name for printing on the official ballot.

Original proceeding in mandamus. Opinion filed July 7, 1904. Motion to dismiss denied.

*W. S. Jenks, O. L. Miller, A. L. Berger, W. D. Wood,* and *D. R. Hite,* for plaintiff.

*H. G. Larimer, C. C. Coleman,* attorney-general, *F. R. Ogg, G. J. Barker,* and *C. W. Trickett,* for defendant.

The opinion of the court was delivered by

MASON, J. : This is an original proceeding in mandamus by which it is sought to require the secretary of state to certify to the various county clerks of the counties comprising the second congressional district the name of Henry J. Allen as the republican nominee for congressman from that district. The affidavit

Allen v. Burrow.

for the writ discloses that two certificates of nomination have been filed with the secretary of state, each purporting to be authenticated by the officers of the regular republican congressional convention, one naming plaintiff as the nominee, the other naming .J. D. Bowersock ; that the question of which of them should be recognized has been considered by the officers to whom the statute (Gen. Stat. 1901, § 2703) commits the determination of such matters ; and that a majority of them have decided in favor of the latter. To obviate the effect of that decision three contentions are made :  (1) That the statute creating such tribunal and making its decision final is unconstitutional in that it devolves judicial functions upon executive officers and in that it impairs the original constitutional jurisdiction of the supreme court in mandamus ; (2) that the certificate filed with the secretary of state on behalf of Bowersock was insufficient to be the basis of any inquiry, and that on account of certain matters of procedure the decision was without jurisdiction ; (3) that the decision was wrong in fact and in law, and was made in pursuance of a fraudulent plan to prevent the placing of plaintiff's name upon the ballot, to which fraud the officers making the decision were parties.

An alternative writ has been issued and an answer has been filed denying its material allegations.   The defendant, however, by a motion to dismiss the proceeding, which is equivalent to a motion to quash the alternative writ, challenges the jurisdiction of this court to grant the plaintiff any relief, even assuming the facts to be as stated by him.   The determination of this preliminary question is the purpose of the present inquiry.

The statute, the benefit of which is invoked by de-

fendant and the validity of which is denied by plaintiff, reads as follows:

"The certificate of nomination and nomination papers being so filed, and being in apparent conformity with this act, shall be deemed to be valid, unless objection thereto is duly made in writing within three days from the date said papers are filed with the proper officers. Such objections or other questions arising in relation thereto, in the case of nominations of state officers or officers to be elected by the voters of a division less than a state and greater than a county, shall be considered by the secretary of state, auditor of state, and attorney-general, and a decision of a majority of these officers shall be final."

The constitutionality of this statute was upheld by this court in *Miller v. Clark*, 62 Kan. 278, 62 Pac. 664, against the very attack now made upon it, supported by substantially the same arguments now urged upon our attention. In the brief of the plaintiff in that case it was said:

"The power attempted to be conferred on the secretary of state, auditor and attorney-general by section 144 of chapter 36, General Statutes of 1899 (Gen. Stat. 1901, § 2703), is clearly a judicial one. These officers belong to the executive branch of the government and judicial power cannot be conferred upon them."

This contention was held not to be well founded, and we are satisfied with the conclusion there reached. In the opinion the power conferred upon the officers named was described as *quasi*-judicial. In *Meffert v. Medical Board*, 66 Kan. 710, 72 Pac. 247, this term was applied to the functions of the state board of medical registration and examination, which was said not to be a judicial body, although by its determination a physician might be deprived of his means of livelihood. Executive officers are often charged with duties so far judicial in their nature that they

Allen v. Burrow.

require the investigation and decision of questions involving valuable rights. The principle requiring the separation and independence of the three departments of government, the executive, legislative, and judicial, does not demand the absolute isolation of each from the others. One person may exercise different duties not clearly assignable to the same department, where there is no inconsistency between them. But the same officer or body may not act in different capacities with respect to the same subject-matter. (*The State v. Johnson*, 61 Kan. 803, 60 Pac..1068, 49 L. R. A. 662.)

Speaking of the law imposing upon probate judges the duty of issuing permits for the sale of liquor, Justice Brewer said, in *Intoxicating-liquor Cases*, 25 Kan. 751, 760, 37 Am. Rep. 284 :

"It may be conceded that it would be more logical and less objectionable to say that the legislature may create an office with specified duties, and then make the person holding the position of probate judge the incumbent of ·such office, than to hold that certain duties may be cast directly upon the person holding the office of probate judge. But substance is above form. That which may properly be done in one way ought to be upheld, if possible, though done in another way ; and an act of the legislature should be sustained whenever by·any reasonable construction the act can be brought within the scope of the legislative power. If in this case the legislature had created the office of commissioner of licenses, and provided that the probate judge should *ex officio* be such commissioner, there could be little doubt of the constitutionality of such an act. Substantially the same thing is accomplished by casting upon him the duties named in this act. And having in view the duty of upholding an act of the legislature wherever possible, the past decisions of this court, the general recognition by all departments of the government—executive, legislative, and judicial—of the correctness of such exposition of constitutional limitations, and the

substance rather than the form of this proceeding, we think the casting of this duty respecting permits upon the person holding the office of probate judge must be adjudged within the power of the legislature.''

Applying this reasoning to the present case, it may be said that the legislature, having in mind the necessity of providing for the settling of disputes as to the nominations of political parties in a summary way, has created a special tribunal for that purpose, having a membership of three; that, instead of providing for the appointment or election of the members of such board, it has enacted that it shall be made up of the individuals who at the time hold the offices of secretary of state, auditor of state, and attorney-general. These officers, in exercising the duties devolved upon them by this statute, do not, in any sense important to this discussion, act in their respective capacities of secretary of state, auditor, and attorney-general, and would not in such capacities be chargeable with any dereliction of which they might be guilty as members of such tribunal. (*The State, ex rel.*, v. *Brown, Probate Judge*, 35 Kan. 167, 10 Pac. 594.) Other officers, instead of those selected, might have been designated for the purpose with equal propriety. They were not chosen for any supposed connection between their respective departments and the matters to come before the new board. It is true that the secretary of state happens to be the officer who has custody of the certificates of nomination and who is required to transmit to the county clerk the names of the persons found to have been duly nominated, but this duty is purely ministerial and can be controlled by mandamus. It is in no way involved with the matter of passing upon the ques-.

Allen v. Burrow.

tion of who are the regular nominees. The attorney-general is the constitutional adviser of the other two officers who are associated with him upon this contest board, but only in their respective capacities as .secretary and auditor of state, not as members of the board. Upon questions of law arising before that body he has no more authority than either of the others. There is no possible interference or incompatibility between the duties laid upon these individuals as officers of the executive branch of the state government and those imposed upon them as members of this special tribunal ; and whatever term may be used in defining their functions while acting in the latter capacity, the statute is not within the reason of the rule forbidding the intermingling of the several governmental powers.

With respect to the contention that the statute is unconstitutional by reason of impairing the jurisdiction of this court nothing need be added to what was said in *Miller v. Clark*, supra.

Since the general adoption of the Australian-ballot law the courts have frequently been called upon to settle disputes about the regularity of nominations made by political conventions. The adjudications show little divergence of judicial opinion. The varying practice in the several states results mainly from statutory differences. Where two conventions are held, each claiming to be the authorized exponent of the same political party, the courts, from an unwillingness to undertake the settlement of purely political controversies, have generally required the nominees of each to be printed on the official ballot, where that was permitted by statute. (*Sims v. Daniels*, 57 Kan. 552, 46 Pac. 952, 35 L. R. A. 146 ; *Phelps v. Piper*, 48 Neb. 724, 67 N. W. 755, 33 L. R. A. 53 ; *Shields v.*

*Jacob,* 88 Mich. 164, 50 N. W. 105, 13 L. R. A. 760 ; *People, etc., v. District Court, etc.,* 18 Colo. 26, 31 Pac. 339 ; *State v. Allen,* 43 Neb. 651, 62 N. W. 35 ; *State v. Piper,* 50 id. 25, 69 N. W. 378.)    Where the statute forbids the printing of more than one set of nominees of the same party, and makes no specific provision for deciding which should be accepted as regular when more than one are presented, the courts assume jurisdiction to determine~ the matter from necessity, there being no other way of settling the question.  (*State v. Falley,* 9 N. Dak. 450, 83 N. W. 860 ; *Williams v. Lewis,* 6 Idaho, 184, 54 Pac. 619 ; *McCoach v. Whipple,* 24 Colo. 379, 51 Pac. 164 ; *In re Fairchild,* 151 N. Y. 359, 45 N. E. 943.)    But where the statute provides for the settlement of all such disputes by reference to some special tribunal, its decisions are held to be final. (*Chapman v. Miller,* 52 Ohio St. 166, 39 N. E. 24 ; *Cain v. Page et al.,* [Ky.] 42 S. W. 336 ; *Moody v. Trimble,* 109 id. 139, 58 S. W. 504, 50 L. R. A. 810 ; *The People v. Baird,* 164 Ill. 533, 45 N. E. 1081 ; *State v. Foster,* 111 La. Rept. 939, 36 So. 32 ; *People v. District Court of Second Judicial District,* 74 Pac. [Colo.] 896.) The case last cited arose under a statute which required all such controversies to be submitted to the state central committee of the party to which the disputants belonged, and made the decision of such committee final.    The statute was attacked as unconstitutional on the ground that it was an infringement on the judicial department of the government, but was held to be valid.

An objection is made by plaintiff to the form of certificate filed with the secretary of state by the opposing claimant.    The statute (Gen. Stat. 1901, § 2697) requires that the certificate be signed by the chairman and secretary of the convention making the nomina-

tion, and that the person signing it make and sub-·
scribe an oath to its truth.   Here the document. filed·
consists of a statement signed by the officers of the
convention, followed by the jurat of the officer admin-
istering the oath.   This seems a sufficient compliance·
with the statute, but the question is one on which.
the board was competent to pass.

Plaintiff also contends that if the contest board ever·
acquired jurisdiction in the matter it lost it by post-
poning the hearing to a time more than five days after·
the filing of objections to the certificate.   The statute
requires the inquiry to be begun within five days, but
does not forbid necessary continuances.   Complaint is
made of lack of notice of the hearing, but the objec-
tion is not substantial.

It remains only to consider the effect of the allega-
tions of the alternative writ, that the majority of the
contest board who made the decision against plaintiff·
did so in compliance with a corrupt and fraudulent.
agreement, to which they were parties, that plaintiff·
should be prevented from having his name printed·
upon the official ballot as the republican candidate·
for congressman, regardless of the merits of his claim.
So far as the allegations of conspiracy relate only to·
fraud practiced against the plaintiff by his political
or factional opponents in regard to choosing dele-
gates, manipulating committees, organizing conven-
tions, filing certificates, and all other matters affecting.
his right to be recognized by the contest board as the
regular nominee of his party, they are not material in
this inquiry, for the reason that they concern ques-
tions which, under the statute, must be decided by
that board, and not by the courts.   But the writ, fol-
lowing the affidavit on which it is based, in addition
to various allegations more or less directly implicating.

the officers referred to in its charges of fraud, includes this express averment:

"Said J. D. Bowersock, as a part of his said fraudulent scheme and design, early in said campaign for the nomination for congress from the second congressional district, fraudulently and corruptly conspired and entered into an arrangement with the defendant, J. R. Burrow, secretary of state, and with C. C. Coleman, attorney-general, such persons constituting a majority of said contest board, whereby it was provided, understood and agreed that if the said J. D. Bowersock would procure from a bolting and fraudulent assemblage of persons claiming to be the congressional convention of the said congressional district a false, spurious and fraudulent certificate of nomination, and would file the same in the office of the secretary of state, defendant herein, then they, said Burrow and said Coleman, being a majority of the contest board provided by statute for the hearing of contested nominations, would recognize such false, spurious and fraudulent certificate of nomination, notwithstanding any objections thereto and notwithstanding clear and convincing proof of the fraudulent character of the assemblage which had pretended to authorize the execution of the same, and notwithstanding the fact that clear, positive and conclusive proof should be presented before said board of the regular nomination of H. J. Allen for the said office."

In *Miller v. Clark*, supra, it was said:

"We do not hold, however, that if the action of the officers specially designated to pass on the merits of such a controversy was induced by bad faith, or was the result of arbitrary acts showing wrongful conduct amounting to fraud, or their findings resulted in personal benefit to themselves, equity would not interpose to prevent a candidate from being thus wronged, or that the remedy by mandamus, sought to be employed in this case, might not be invoked."

It has often been said of special tribunals established by statute to pass on matters expressly com-

mitted to them that their jurisdiction is exclusive and their determinations final, and that courts will not review their conclusions nor inquire by what method they were reached, but always with an express or implied reservation that the statement holds good only where the action of such tribunal is characterized by good faith, and is free from fraud, corruption, and oppression. (*Meffert v. Medical Board*, supra, *School District v. Davies*, ante, p. 162, 76 Pac. 409 ; 23 A. & E. Encycl. of L., 2d ed., 372.)   No rule is better settled than that courts will not interfere with public officers in the discharge of any duty involving the exercise of judgment or discretion, but this rule presupposes the existence of good faith, and relates to acts done under the guidance of opinions honestly formed, however mistaken in fact ; it has no application to acts done under the influence of a corrupt motive.   Even arbitrary and capricious conduct, amounting to an abuse of discretion, will justify mandamus to compel a proper performance of duty, upon the theory that there has been, in fact, no real exercise of judgment.   (19 A. & E. Encycl. of L., 2d ed. 737–739.)   And courts have jurisdiction to prevent by injunction the consummation of a wilful fraud attempted to be perpetrated under the guise of an exercise of the discretionary powers confided by law to public officers. (*Davis v. The Mayor &c. of New York*, 1 Duer, 451.)

The bias, prejudice, partizanship and unfairness imputed to the members of the board cannot alone be made the basis of the relief sought.   It is reasonable to suppose that such conditions were foreseen and taken into account in the framing of the statute under consideration.   They might have been provided against in various ways.; for instance, by an arrangement al-

lowing challenges upon sufficient reason against any of the officers constituting the board and the substitution of others for them. From the absence of any such provision it may be inferred that the legislature, rather than to risk making the procedure unduly cumbersome and dilatory, in an effort to secure impartiality, preferred to permit the officers named to act even in cases in which they are interested, upon the theory that other considerations must be made to yield to the compelling necessity for reaching some quick and final result; but it cannot be thought that it was ever intended that no remedy should be afforded against their actual fraud.

The question presented by the allegations of their corruption is not difficult and requires no extended discussion. If the decision of the contest board was in fact made in virtue of a corrupt agreement between Bowersock and his associates on the one hand and the two members of the board against whom the accusation is lodged on the other, that the matter should be determined against Allen regardless of what the circumstances might be or what questions might arise, then it was not made in the exercise of any real judgment—not even a judgment warped and perverted by interest or passion. The announcement of a conclusion so reached would not be an adjudication at all; it would have none of the attributes of a judgment; it would be a mere sham and pretense, entitled to no respect, requiring no attention from a court of justice, not even to be set aside. It would be preposterous to suppose that any one could be concluded by such an announcement and that the courts would be powerless to grant relief.

Assuming the facts to be as stated in the alternative writ, the situation presented is that it would obviously

be futile to attempt to compel further action by the contest board; the same considerations that vitiate its former decision would prevent any effective determination of the controversy at its hands; its disqualification is complete and absolute. It is as though there were no such board; in effect, there is none; yet here are two persons, each claiming the right to have his name printed upon the official ballot as the republican candidate for congressman from the second district; the law permits but one name to be so printed; in some way a decision must be made between the rival claimants; there is no board in existence competent to pass upon the matter; as in cases arising where the statute makes no special provision for determining such questions, from very necessity the courts must take jurisdiction.

If it be established that the charges of fraud against the members of the contest board are well founded, this court will not hesitate to examine into the facts, with a view of determining the merits of the original controversy between Allen and Bowersock, and to make an order in this proceeding for the secretary of state to certify to the county clerks the name of the candidate who may be found to be the rightful nominee; but as the jurisdiction of the court to make such inquiry depends wholly upon the disqualification of the statutory tribunal, it will not be entered upon unless such disqualification be established. Issues are already joined upon this question as upon the others involved. By an order to be hereafter made, after receiving suggestions from counsel as to a suitable time for such hearing, opportunity will be afforded for the production of evidence bearing solely upon the question whether the decision of the contest board was made in pursuance of a fraudulent scheme

to which the members who joined in the decision were parties. If, upon such hearing, the plaintiff fail to establish such fraud. on their part, an order will be made denying the peremptory writ; if the evidence sustain the charges, further provision will be made for a hearing upon the questions thereby opened up for investigation, and in that event the occasion for making Bowersock a party will be considered.

Before any further step is taken in the case it is ordered that the plaintiff cause the attorney-general to be made a party hereto, adding his name as a defendant and serving notice upon him of the pendency of the action. This course is pursued not in response to the suggestion that in his absence there is a technical defect of parties, but entirely irrespective of any question of that character. Since the immediate subject of inquiry is the good faith of the board, the charges made affecting him equally with the secretary of state, the taking of evidence will not be entered upon without enabling him to participate in the proceedings, with whatever advantage may be derived from being a party to the litigation, and as such entitled to be heard in his own defense, as a matter of right.

For the reasons stated the motion to dismiss is denied, and the cause is retained for the purposes indicated.

All the Justices concurring.