See *Alcorn ex rel. Dawson vs. Gleason, post,* p. 210.

## HUGH M. ALCORN, STATE'S ATTORNEY, EX REL. JOSEPH DAWSON, ET AL.
*vs.*
## JOHN A. GLEASON, TOWN CLERK

Court of Common Pleas    Hartford County    File No. 41237-B

MEMORANDUM FILED OCTOBER 29, 1941.

*Isaac Nassau,* of Hartford, for the Plaintiffs.

*Vincent W. Dennis,* Corporation Counsel, and *John J. Kenney,* of Hartford, for the Defendant.

PARMELEE, J. This memorandum is in continuation of the memorandum dated October 27, 1941 [10 Conn Sup. 205] on the same subject that is before this court, and relates to the prayer for relief in which it is sought that the court order the respondent John A. Gleason, Town Clerk of the City and Town of Hartford "that you remove from your records and from the voting machines the said ticket filed under the name of Union Party by the said Coiro."

The Union Party as a political party had its inception in the State of Connecticut in the year of 1936 prior to the national election. Mr. John J. Godfrey, a principal organizer of the Union Party in 1936 and its candidate for Congress, testified that the Union Party was formed with the idea in mind of carrying out the principles as they were outlined originally in the National Union for Social Justice, which principles were incorporated into the platform of the Union Party of 1936. He stated that it was well known that the party was interested only in a national principle and not in municipal or state politics. Prior to the election of 1936, the Union Party did not have a place on the ballots in this State, but did obtain a place on the ballot in 1936 by petition. Mr. Francis P. Coiro, described in the previous memorandum, was one of the petitioners, as was also Mr. Stephen Ullman, who will be referred to later. In 1936, the state chairman of the Union Party was a Mr. Timothy Crowley, and the town chairman in Hartford in 1936 was a Mr. Ray Morris. Mr. Godfrey further stated that since the unsuccessful party campaign of 1936 no meetings had been called by either of these chairmen, it being considered that the party was no longer active.

Prior to the Hartford town and city election in 1937, a list of nominations for candidates for public office in the City of Hartford was filed with the Town and City Clerk, dated October 1, 1937 (Respondent's Exhibit 7), and reads as follows: "At a meeting of the electors of the Union Party, duly warned and called, and held in the Town of Hartford on the first day of October, 1937, the following were nominated for office as candidates of the Union Party for the Town and City

election to be held November 2, 1937." Then follows a list of nominations. This paper is signed "Francis P. Coiro, Secretary" and is certified to be true and correct by "James L. McGuire, Presiding Officer." This notice bears the Town Clerk's stamp "Received October 4, 1937, at 2:26 P.M." These nominations so received by the Town Clerk and the candidates listed therein were placed on the ballot, petitions having been previously received by the Town Clerk and Secretary of State in accordance with section 588 of the General Statutes, Revision of 1930. (See Respondent's Exhibit 8.) The Assistant Town Clerk, William L. Farrell, testified that Mr. Francis P. Coiro turned in most of the petitions.

On November 1, 1938, a list of nominations for candidates for state offices, including judge of probate in Bridgeport, New Haven, Norwalk and Redding, was filed in the office of the Secretary of State (relators' Exhibit H), and reads as follows: "This is to certify that the following names of candidates should appear under the designation of the Union Party at the coming election to be held on November 8, 1938." Then follows a list of candidates nominated. The exhibit presented in court is a copy and not signed, although there is a place for signature designated "Chairman, Union Party." The testimony is to the effect that this ticket of nominations was submitted to the Secretary of State's office by Stephen Ullman as state chairman of the Union Party.

Prior to the Hartford town and city election in 1939, a list of nominations for candidates for public office in the City of Hartford was filed with the Town and City Clerk, dated October 16, 1939 (respondent's Exhibit 2), and reads as follows: "At a meeting of the electors of the Union Party, duly warned and called, and held in the City of Hartford on the 16th day of October, 1939, the following persons were nominated for the offices as indicated below for the Union Party for the town and city election to be held in this city on November 7, 1939." Then follows a list of candidates which is certified to by "Francis P. Coiro, Presiding Officer", and attested by the secretary. This exhibit bears the stamp of the Town Clerk "Received, October 17, 1939, 7:56 P.M."

Respondent's Exhibit 2-A is a notification to the Town Clerk, dated September 18, 1939, stating: "At a meeting of the electors of the Union Party, duly warned and called, and held in the Town of Hartford on the 13th day of September,

1939, the following were nominated for office as candidates of the Union Party for the town and city election to be held in the City of Hartford on November 7, 1939." Then follows a list of some candidates not included in the list submitted in respondent's Exhibit 2. This notice is signed "Francis P. Coiro, Chairman of the Convention", and is attested by the secretary of the convention. This notice bears the Town Clerk's stamp "Received September 19, 1939, 9:00 A.M." These nominations of candidates for office so received by the Town Clerk were placed on the ballot for the town and city election held in Hartford on November 7, 1939. This was done without petition since the party designation had been on the ballot at the last previous election for the same office or offices. (Gen. Stat. [1930] §588.)

Relators' Exhibit B is a notice dated October 10, 1941, addressed to the Town and City Clerk at Hartford, Connecticut, and states as follows: "At a meeting of the electors of the Union Party, duly warned and held in the City of Hartford on the 10th day of October, 1941, the following persons were nominated for the offices as indicated below for the Union Party for the town and city election to be held in this city on November 4, 1941." Then follows a list of candidates nominated. Said notice is certified to be a true list of candidates nominated by the Union Party "at a duly warned meeting held on the above date", and is signed "Francis P. Coiro, Presiding Officer" and attested by the secretary. This exhibit bears the stamp of the Town Clerk "Received October 14, 1941, 10:42 A.M." This list of nominations of candidates for office to be voted at the city and town election to be held in Hartford on November 4, 1941, is the list referred to for descriptive purposes as the Coiro ticket, and is the ticket filed under the name of Union Party by the said Coiro, and is the ticket which the relators seek to have removed by this action from the records of the Town Clerk and the voting machines.

Joseph Dawson alleges in the complaint that he is the duly qualified town chairman of the Union Party for the Town of Hartford, having been recognized as such in accordance with party rules by a state convention of the Union Party held at New Haven on or about October, 1940, and has acted as such ever since, and that as such town chairman he filed with the said John A. Gleason, Town Clerk, a list of nominations for

candidates to be voted at the said town and city election in Hartford on November 4th (relators' Exhibit A, designated for descriptive purposes as the Dawson ticket). The right of this ticket to be placed on the ballot at the town and city election on November 4, 1941, in the City of Hartford has been adjudicated by the memorandum in this action dated October 27, 1941. The relator Dawson further claims that the Coiro ticket has come into being as a result of a meeting of a group of persons presided over by Francis P. Coiro as chairman, which group and which chairman have no authority to act on behalf of and in the name of the Union Party, and that the said Town Clerk of the Town and City of Hartford is without power and has no authority to accept the list of nominations of candidates filed by this group, and to have the same placed on the ballot to be voted at the city election on November 4, 1941.

Mr. Stephen A. Ullman, of Stratford, Connecticut, testified that he was elected state chairman of the Union Party in the fall of 1938, and that Mrs. Jennie Ferris Cave was elected secretary later on in that same year, and that he is now state chairman of the Union Party; that Mrs. Cave is now state secretary; that he was instrumental in securing a place on the ballot for the state election in 1938, and that at a state convention held in New Haven in the fall of 1940, Joseph J. Dawson, of Hartford, was present and recognized as town chairman for Hartford; that Francis P. Coiro was not a delegate to this convention, and that the said Coiro was not considered by him as state chairman to have any further connection with the Union Party in any capacity whatsoever. He also testified, as did Mrs. Cave, the state secretary, that rules of the Union Party were adopted at this convention, which rules are now the governing rules of the Union Party. These rules were offered in evidence as relators' Exhibit E.

Although the rules provide that the Union Party shall consist of all persons whose names are legally on the caucus lists of the Union Party in the several towns (Article I); that the executive organization requires a town committee for each of the several towns within the State (Article II, 3); that a town committee for each of the several towns of the State shall be elected at a convention called for the purpose by the members of the Union Party who have their legal residences within that town, the members of any town committee to be sanc-

tioned or ratified by the state central committee before they
are given recognition (Article V); and that candidates for
town offices shall be nominated by conventions to be held in
each of the several towns (Article VI, 5), the evidence is
entirely silent as to who constitutes the Union Party in Hart-
ford, with the exception of the relator Dawson, recognized as
chairman of the town committee. There is no evidence of
what names are legally on the caucus lists of the Union Party
in Hartford, nor who are the members of the town committee
in the Town of Hartford, nor do the records of the state cen-
tral committee record who has been ratified as members of
the Hartford town committee with the exception of the relator
Dawson.

Several exhibits were filed as the minutes of meetings held
in New Haven of the state central committee of the Union
Party, and minutes of the state convention of the state central
committee held in the fall of 1940. It appears from a reading
of these minutes that Mr. Coiro had been active in the affairs
of the party prior to the fall of 1940. There is evidence of
the fact that the state central committee and Mr. Ullman,
the state chairman, were aware of the activities of Mr. Coiro
on behalf of the Union Party in the town and city elections
of 1937 and 1939. In fact, it was known that he was acting
as the leader of the Union Party group in Hartford during
the municipal elections of 1937 and 1939. There was some
testimony and evidence to the effect that there was some op-
position in the state central committee and the state conven-
tion to Mr. Coiro, who had sought to be named state chair-
man of the Union Party. However, there is no evidence,
nor was there any testimony, to the effect that Mr. Coiro nor
any members of the Union Party in Hartford have ever been
notified prior to the time of the meeting which nominated the
Coiro ticket that Mr. Coiro was no longer identified with
the Union Party.

All of the evidence in this case and the numerous exhibits
can lead to no other conclusion but that the state organization
and government of this political party has been very loosely
administered since the unsuccessful campaign in 1936, particu-
larly in regard to its relations with local units. It is further
apparent that this has resulted in what has now become a
factional dispute within the party organization. Such are
bound to arise. They may relate to the regularity of party

organization or party action or, as in this case, a party nomination. It is admitted that the Union Party is a political organization casting less than 10 per cent of the total vote of any town or city at the last previous general election. Therefore, chapter 40 of the General Statutes, Revision of 1930, concerning primaries, caucuses and conventions is not applicable. (Gen. Stat. [1930] §712.) Over questions of political party policies or organization, or the conduct or proceedings of political conventions, the courts, in the absence of express statute, have no jurisdiction. Such questions should be determined by the regularly constituted party authorities rather than by the courts. *Smith vs. McQueen,* 232 Ala. 90, 166 So. 788; *Sims vs. Daniels,* 57 Kan. 552, 46 Pac. 952; *Davis vs. Hambrick,* 109 Ky. 276, 58 S.W. 779; *State ex rel. Nebraska Republican State Central Committee vs. Wait,* 92 Neb. 313, 138 N.W. 159; *Marcum vs. Ballot Commissioners,* 42 W.Va. 263, 26 S.E. 281. The rule appears to be that in factional controversies within a political party where there is no controlling statute or clear legal right involved, the court will not assume jurisdiction, but will leave the matter for determination by the proper tribunals of the party itself, or by the electors at the polls. *Smith vs. McQueen, supra; Allen vs. Burrow,* 69 Kan. 812, 77 Pac. 555; *Davis vs. Hambrick, supra; Stephenson vs. Election Commissioners,* 118 Mich. 396, 76 N.W. 914; *State ex rel. Nebraska Republican State Central Committee vs. Wait, supra.* In the absence of a statute conferring jurisdiction, courts will not undertake to settle and determine substantial controversies between rival political committees or factions of such a committee, the right in which is dependent upon party rules, usages and customs. *State ex rel. Smith vs. County Court,* 78 W.Va. 168, 88 S.E. 662.

The Supreme Court of Pennsylvania in the case of *Independence Party Nomination,* 208 Pa. 108, 113, 57 Atl. 344, 346, considered a situation not unlike the instant case, and stated that: "Any combination or aggregation of electors with sufficient coherence and organization to have acted together for a common purpose, and sufficient strength and continuity to have polled two per centum of the highest vote at the next preceding election, is a political party within the statute, having the right to put nominations on the ballot by certificate. What the bond shall be which holds the combination together is exclusively within its own determination. It may be different principles from those of other political parties, a different

object, or the same object by different means. These and all similar matters are outside the jurisdiction of the courts and rest exclusively on the will of the individual electors.

"The objection, therefore, made in the court below, that the Independence party claim to be still Democrats on national issues is not one with which the court has any concern. If as Independents they polled the requisite vote in this county at the last election, they are a separate party so far as the court is concerned, to make nominations for a county election. It is not necessary that the object of the party should be broad enough to apply to the whole state, or that it should have polled a vote in the whole state....They may therefore call themselves and act as Independents in this county and as Democrats through the rest of the state. So far as the court is concerned they may form a party within a party, or may be a branch or wing or section or faction of one party and yet have a separate standing of their own in the district where they have polled the requisite vote as such....Whether such assertion of individual liberty and such separate party action for municipal purposes while adhering to Democratic national policy is of so great a departure from Democratic principles, practice and discipline as to forfeit the right to act as an integral part of the Democratic party in convention on state or national matters will be for the majority of that party to decide when the question arises. It is not a judicial question."

Political parties are voluntary associations for political purposes. They establish their own rules. They are governed by their own usages. Voters may form them, reorganize them, and dissolve them at their will. The voters ultimately must determine every such question. The voters constituting a party are indeed the only body who can finally determine between contending factions or contending organizations. The question is essentially political and not judicial in its character. It would be alike dangerous to the freedom of elections, the liberty of voters and to the dignity and respect which should be entertained for judicial tribunals for the courts to undertake in any case to investigate either the government, usages or doctrines of political parties, and to exclude from the official ballots the names of candidates placed in nomination by an organization which a portion, or perhaps a large majority of the voters professing allegiance to the particular party, believe to be the representatives of its political doctrines and its party

government. *Phelps vs. Piper,* 48 Neb. 724, 67 N.W. 755; *People ex rel. Eaton vs. District Court,* 18 Colo. 26, 31 Pac. 339; *Shields vs. Jacob,* 88 Mich. 164, 50 N.W. 105; *State ex rel. Sturdevant vs. Allen,* 43 Neb. 651, 62 N.W. 35.

. The people of local districts are jealous of their right to nominate and elect candidates of their own choice, and in matters affecting the locality do not willingly surrender that choice to those in control of the body representing the party policy for state· purposes. If a state political organization should have the power to approve and disapprove nominations. for local and district offices, the hands of the local people would be so effectually tied as to deprive them of the valued privilege of making their own nominations and of voting for the candidates of their own choice. If the policy of allowing the people to select their own candidates for local offices is. to be curtailed, it is for the Legislature to take action in language so plain and ·expressive of such an intention as to leave no doubt about its meaning. *Wakefield's Appeal* (2 cases), .229 Pa. 581, 585, 79 Atl. 117, 119.

The reluctance of courts to decide between rival factions of political organizations is proverbial. *State ex rel. Stur· devant vs. Allen, supra; In re Appointment of Supervisors of Election,* 9 Fed. 14; *Matter of Woodworth,* (Supreme Court) 16 N.Y.S. 147; *Matter of Redmond,* 5 Misc. 381, 25 N.Y.S. 381; *Matter of Pollard,* 55 N.Y. St. Rep. 155, 25 N.Y.S. 385; *Shields vs. Jacob, supra; People ex rel. Eaton vs. District Court, supra. State ex rel. Sturdevant vs. Allen, supra,* is a case in· volving a dispute between rival factions of a political organiza· tion. There were two conventions called or held by rival fac· tions of a party, each faction having an organization and claiming recognition in behalf of the party. In a long opinion citing many of the cases above noted, it is stated (p. 661 of 43 Neb.) "that the courts should, in case of doubt, adopt that construction which affords the citizen the greatest liberty in casting his ballot."

The court will not determine the factional dispute within the party organization. There is no machinery provided by our law, whether ·judicial or otherwise, to make a settlement, or at least a timely settlement. The verdict of the voter must for the most part sooner or later decide the controversy. *Flanagan vs. Hynes,* 75 Conn. 584, 589.

I find that the Coiro ticket was nominated by an organiza·

tion of electors in accordance with the provisions of section 586 of the General Statutes, Revision of 1930, having the right to have nominations on the ballot in accordance with section 588 of the General Statutes, Revision of 1930. Therefore, the prayer to issue a writ of mandamus requiring John A. Gleason, Town Clerk of the City and Town of Hartford, to remove from the records and from the voting machines the said ticket filed under the name of Union Party by the said Coiro should be denied. Writ denied.