WILLIAMSON *v.* KILLOUGH.

Opinion delivered February 15, 1932.

A. B. Shafer, Creed Caldwell, Williamson & Williamson, Sam Rorex and W. S. Atkins, for petitioners.

R. V. Wheeler, S. V. Neely and Coleman & Riddick, for respondents.

SMITH, J. A petition for certiorari has been filed in this court, from which, with the responses thereto, the following facts are made to appear. On December 21, 1931, the county court of Crittenden County made five separate orders changing the lines between certain townships in that county, and one of the effects of each of said orders was to move a Democratic county central committeeman from his township into another. The changes made by these orders were as follows. By one of them the residence of Joe Summerville was changed from Mississippi Township to Proctor Township. The residence of E. D. Gooden was changed from Mound City to Jasper Township; the residence of F. J. Hixon was changed from Fogleman to Wappanocca Township; the residence of Les A. Barton was changed from Black Oak to Fogleman Township; and the residence of J. R. Hood was transferred from Tyronza to Black Oak Township.

On the same day on which these orders were made by the county court, the Democratic county central committee convened in special session, at which meeting the chairman of the committee refused to recognize the five committeemen hereinabove named, for the reason that they, having been transferred out of the townships for which they had been elected, by the orders of the county court, were no longer members of the committee.

An appeal from this ruling of the chair was made, and nine committeemen, including the five sought to be disqualified, voted to sustain the appeal, and four committeemen voted to sustain the ruling of the chair. The chairman refused to recognize the right of the five committeemen above-named to vote, and declared their offices vacant, whereupon these five, with four others,

declared the office of chairman vacant, and by the same vote elected a new chairman, and the nine committeemen who voted to overrule the chair, including the old secretary of the committee, adjourned subject to the call of the new chairman. The old chairman and the four committeemen who voted to sustain his ruling remained in session and proceeded to elect successors to the five committeemen, whom they claimed had been ousted from office, together with a new secretary of the committee after which they sent a certified copy of their minutes showing such elections to the Democratic State Central Committee.

Thereafter these five committeemen whose residences had been changed from one to another township by the orders of the county court filed a petition in the circuit court for a writ of certiorari, praying that the orders of the county court be quashed. It was alleged by these petitioners that the purported orders of the county court were void for numerous reasons, among others that they were made by the county judge, and not by the county court.

On February 1, 1932, an application was made to one of the judges of the circuit of which Crittenden County is a part for a temporary order preserving the *status quo,* and an order was made by the circuit judge which recited that a *prima facie* showing had been made that the orders of the county court were void, and upon this finding it was ordered "that any and all persons are hereby restrained from recognizing any purported order of the Crittenden County Court purported to have been made on December 21, 1931, in the matter of changing township lines until the final hearing of this cause."

Another proceeding of similar nature was filed, which included additional parties, in which the circuit judge made an order restraining the county clerk from entering the orders changing the boundary lines of the townships until the further order of the circuit court.

Thereupon this proceeding was begun in this court in the name of the chairman and secretary of the State

Democratic Central Committee and the chairman and secretary of the Crittenden County Central Committee as reorganized, in which they prayed that a writ of certiorari issue directed to the clerk of the circuit court of Crittenden County commanding him to certify up to this court a certified transcript of all records in the Crittenden Circuit Court in the matter of changing township lines, and the two causes hereinabove referred to there pending, and "that, upon the coming in and inspection of said records, the orders therein made, to the extent they are beyond the jurisdiction of the circuit court as herein set out, be quashed, and that, pending the hearing upon such writ, a temporary restraining order issue prohibiting both the circuit judges of Crittenden County from proceeding further in either of said causes until the final order of this court, and for all other appropriate relief."

The records referred to have been brought up on certiorari and are now before us, and it is insisted that the orders of the circuit court staying all proceedings in the matter of the changed lines of the townships were void as being in excess of his jurisdiction.

In support of this contention, it is argued that the effect of the orders of the circuit court is to assume jurisdiction of a contest for places on the Democratic County Central Committee, a subject over which the committees of the party, State and county have exclusive jurisdiction, and over which the courts have no jurisdiction.

It is our opinion, however, that the circuit court has not acted without jurisdiction or in excess of its jurisdiction, as petitioners contend.

It must be remembered that the circuit court has appellate jurisdiction to review all orders of the county court, and, in the exercise of this jurisdiction, the power inheres to make such orders as appear to be appropriate. The circuit court has the jurisdiction, for instance, to decide whether the orders in regard to the township lines were void as not having in fact been made by the county

court, just as it has the jurisdiction to determine that these orders, even if made by the county court, were erroneous as being an abuse of the discretion vested in the county court in this behalf. The circuit court unquestionably has the jurisdiction, upon hearing the appeals which have been prosecuted from the orders of the county court, to vacate those orders and set them aside as being an abuse of the discretion of the county court, and pending the hearing of the appeal the circuit court has the jurisdiction to preserve the *status quo*.

These are, of course, elementary principles, which petitioners concede to be true, but which they say do not apply here for the reason that they are concerned only in the membership of the county central committee, which question they say is purely political, and one over which the courts have no jurisdiction whatever, and the case of *Tuck* v. *Cotton*, 175 Ark. 409, 299 S. W. 613, is cited to sustain this contention.

The case just cited was brought to contest the election of a township committeeman, and the suit was dismissed by this court on the ground that "the courts will not assume jurisdiction of contests for the offices of committeemen or delegates of a political party" to a convention of the party, for the reason that the law governing the primary election out of which the contest arose had not conferred jurisdiction on the courts to hear contests over an election for places on county committees.

The history of our primary election law is a matter of common knowledge. The case of *Walls* v. *Brundidge,* 109 Ark. 250, 160 S. W. 230, Ann. Cas. 1915C, 180, was one in which there was an attempt to contest in the courts of the State the nomination of the Democratic party for the office of Governor, and in that case we reversed the action of the Pulaski Chancery Court, which had assumed jurisdiction of the contest. The decree of the chancery court was reversed, for the reasons stated, that the question involved was political, and not juristic. However, an act was initiated and

adopted by the people, which is referred to as Initiative Act No. 1, which appears at page 2287 of vol. 2 of the Acts of 1917, which conferred jurisdiction upon the courts of the State to enforce the provisions of this initiated act.

The validity of this act is not questioned, and the jurisdiction there conferred has been frequently exercised by the courts of the State, as appears from the numerous reported cases by this court which arose under that act.

Section 12 of this act conferred the right to contest nominations in certain cases, and this § 12 of the initiated act appears as §§ 3772 and 3773, Crawford & Moses' Digest. Section 3772, Crawford & Moses' Digest, was construed in the case of *Tuck* v. *Cotton, supra,* and it was there held that § 3772, *supra,* which authorized contests of elections in certain cases, did not embrace committee places, for the reason that such places were not offices within the meaning of the law. It was said, however, that "the Legislature has the authority to give the courts jurisdiction in those matters," and that the courts would exercise such jurisdiction as had been conferred.

The case of *Tuck* v. *Cotton, supra,* does not apply here, for the reason that there is no contest over the election of these committeemen. That the committeemen were duly elected, and for a term of two years, and that their terms have not expired, are undisputed facts; and it is also undisputed that they are committeemen unless the orders of the county court removing them from one township into another have the effect of vacating their places.

The election law is not silent, however, upon the subject of vacancies in committee places. Section 8 of the act, which appears as § 3764, Crawford & Moses' Digest, deals with the subject of vacancies in delegations to conventions and in county committee memberships. It is made optional with the political party to avail itself of the provisions of the primary election

law. The party may employ this law or not in the selection of its candidates, but, when the option has been exercised to employ the law for the purposes intended, the act must be followed, and it governs in all situations to which its provisions are applicable. The case of *Tuck* v. *Cotton, supra,* expressly recognizes that the power inheres in the Legislature to enact legislation for such supervision and control.

It was contemplated by this act that vacancies might arise in delegations to conventions called pursuant to the act and in the membership of the county committees elected under the authority of the act.

The primary election law requires the election of the committeemen by the voters at an election, and provides that only names of those certified as required by the act shall be printed on the ballot, unless no name has been certified, and provides who shall be eligible to be voted for, and that the election of ineligible persons to those offices shall be void.

The opinion in the case of *Tuck* v. *Cotton, supra,* quoted with approval the statement of the law appearing in the chapter on Elections in 9 R. C. L., page 1088, § 98. In the preceding section of the same chapter it was said: "The dormant idea pervading the primary law is the absolute assurance to the citizen that his wish as to the conduct of the affairs of his party may be expressed through his ballot and thus be given effect, whether it is in accord with the wishes of the leader of his party or not, and so shall be put in effective operation in the primaries. In other words, the scheme is to permit the voters to construct the organization from the bottom upwards, instead of permitting leaders to construct it from the top downwards. And, in order to accomplish this end, not only is it necessary to protect the right of party members to vote at the primary as against unreasonable regulation, but also to protect the committeeman or other party officially elected thereat from being summarily ejected from his place in the party organization. So, where the primary law provides for party

committees and the election of party committeemen, membership may be gained in no way other than that provided by the statute, namely, by the suffrage of the party members at the primary election. The committee cannot remove the committeemen so elected, and it is the duty of the court to give full force and effect to the legislative intent so manifested."

As has been said, provision is found in the Initiated Act for filling vacancies, both in delegations to conventions and in committee memberships, and this provision is found in § 8 of the act, which appears as § 3764, Crawford & Moses' Digest, and reads as follows: "The county conventions shall at said time declare the result of said primary election and select delegates and alternates to all conventions. Provided, nothing in this act shall be construed to prohibit the State Central Committee from making any rules that it may think wise for the election of delegates to the National Convention, and said delegates may be elected before the primary election. No candidate for office, or office-holder, or deputy of an office-holder, shall be eligible to membership on county central committees, or as a delegate to county or district conventions, or as a judge or clerk of any primary election. The selection of ineligible persons shall be void, and the vacancy filled as other vacancies are herein provided to be filled. Vacancies in the delegation to a convention, arising from death, absence, resignation or ineligibility, shall be filled by the alternates in the order of their selection, and, in absence of alternates, by the remaining members of the delegation. Vacancies in the central committee shall be filled by the committee."

It thus appears that the statute has provided when vacancies can be said to exist and how they may be filled in either convention delegations or in committee memberships. There is no contention here that any vacancy has been created in the committee membership by death, absence, resignation or ineligibility. There has been only a change in the lines of the townships in which certain committee members resided at the time of their election, and no other question as to their eligibility is raised.

Under the statute the electors elect their committeemen, and they are elected for a definite time, and they have the right therefore to serve as such until, under the statute, conditions arise which constitute a vacancy. It is then and then only, that the central committee, as a body, is authorized to elect their successors.

While the members of the committee are elected in the township or city ward in which they reside, they become, upon their election, members of the county committee, and the authorities appear to be unanimous that after such election the right to discharge the functions of a committeeman is not affected by a subsequent change of boundary lines which would place the residence of the committeemen in another township or ward, and this change of lines does not automatically or otherwise affect the incumbent, but the committeeman, if he remains otherwise eligible, continues as such until his successor is elected pursuant to the provisions of the law regulating the election.

It is said that the changes of the township lines have removed certain justices of the peace, who are township officers, from the townships for which they were elected, into other townships, but this action did not operate to deprive them of their offices. Section 6395, Crawford & Moses' Digest, reads as follows: "When a township shall be divided, and any justice of the peace of the original township shall fall into the new township, he shall continue to discharge the duties of a justice of the peace until his commission expires, in the same manner as if such township had not been divided, only his process shall be in conformity with the name of the township in which he resides."

This statute, while applicable only to justices of the peace, is declarative of the principles of law which govern in the question here involved.

The case of *State ex rel. Norwood* v. *Holden*, 45 Minn. 313, 47 N. W. 971, arose under a statute of the State

of Minnesota which provided that the board of county commissioners should, after the Federal census of the population of the county, proceed to redistrict the county, and this action of the board, when taken, resulted in excluding certain commissioners from the districts of the county in which they had been elected as members of the county board before the census was taken. The question was raised whether the members who had been removed from the districts of the county in which they had been elected had ceased to be members of the board. In holding that these commissioners had not ceased to be members of the county board, the Supreme Court of Minnesota, speaking through Mr. Justice MITCHELL, said: ''In our opinion, an order redistricting a county is merely prospective in its operation as to the election and qualification of members of the board of commissioners, and in no way affects the right to the office of those previously elected. There is nothing in the language of the statute to indicate that a redistricting is intended to have any retrospective operation. On the contrary, the language of § 94 favors the opposite view. The commissioner, it says, 'must at the time of his election be a resident of said district and shall reside therein during his continuance in office.' What this last clause has reference to is an actual change of residence, and not a change of district boundaries. The division of a county into districts is merely for election purposes. The duties of commissioners are not local, or to be performed in only a particular part of the county. On the contrary, they are merely members of an entire board which acts as such for the entire county. Any other construction would lead to the gravest abuses, and often entirely defeat the popular will as expressed at the polls. * * * It seems that it was assumed that if relators had, by reason of the redistricting, become disqualified from taking their seats on the board in January, this created vacancies which the chairman and the boards of town supervisors were authorized to fill. But this was a mistake, for it would not be one of

the events the happening of which would create a vacancy under the provisions of Gen. St. 1878, C. 9, § 2. * * * The practical result, then, of respondents' construction of the law is that it is in the power of a majority of the board of commissioners, by gerrymandering the county, to legislate out of office any two of their own number, or to keep out of office those who have been elected their successors, and hold onto the offices themselves for two years longer than the terms for which they were elected. There is nothing in the language of the statute which compels a construction leading to consequences so dangerous and unjust.''

A late case on the subject is that of *Olsen* v. *Merrill,* 5 Pac. (2d) 226, where, after an extensive review of the authorities, it was held by the Supreme Court of Utah that members of the board of education of cities of the second class are entitled to serve as members of the board for the remainder of their terms, notwithstanding an ordinance redistricting the city placed them outside the boundaries of the municipal wards for which they were elected.

See also, *State* v. *Craig,* 132 Ind. 54, 32 Am. St. Reps. 237; *State ex rel. Atty. Gen.* v. *Board of Supervisors,* 21 Wis. 449; *State ex rel. O'Connell* v. *Nelson,* 7 Wash. 114, 34 Pac. 562; *People* v. *Markham,* 96 Cal. 262, 31 Pac. 102; *State* v. *Lake,* 16 R. I. 511, 17 Atl. 552; *State* v. *Swearingen,* 12 Ga. 23; *State* v. *George,* 23 Fla. 585, 3 So. 81; *State ex rel. Childs* v. *Marr,* 65 Minn. 243, 68 N. W. 8; *Standford* v. *Lynch,* 147 Ga. 518, 94 S. E. 1001; *State* v. *Craig,* 132 Ind. 54, 16 L. R. A. 688, 31 N. E. 352, 32 Am. St. Reps. 237; *Brungardt* v. *Leiker,* 42 Kan. 206, 21 Pac. 1065; *State ex rel. Connolly* v. *Haverly,* 62 Neb. 767, 87 N. W. 959.

It is true these are cases where officers were removed by changes in lines from the ward or district or township in which they were elected, whereas in the instant case the committeemen are not officers, but that fact does not affect the legal principles which control. The controlling legal principle is that the committeemen were

elected at an election made legal by the primary election law, and for a definite time not yet expired, and it is true also that upon their election they become county committeemen, although elected by townships or wards. Their functions are not confined to the township or ward in which they reside, but they, in conjunction with other committeemen similarly elected, are committeemen for the county, and changes in the lines of their townships or wards do not affect their eligibility, for the reason that such changes are prospective in their nature so far as the incumbents affected are concerned. We find no division in the authorities on this subject.

If, however, the rule were otherwise, the conclusion which we have reached would not be changed. It appears from the record before us that the circuit court found the fact to be, upon the applications for the orders preserving the *status quo,* that a *prima facie* showing had been made that the orders of the county court were void, and for that reason all proceedings thereunder should be stayed until the final determination of the validity of the orders on the appeals which have been prosecuted to the circuit court and which are there now pending and undisposed of. Certainly, if the county court had the authority to make the orders in question, the circuit court had the jurisdiction to review them. The circuit court has the same jurisdiction on appeal which the county court had originally, and the circuit court may make such orders as in its opinion the county court should originally have made. *Horn* v. *Baker,* 140 Ark. 168, 215 S. W. 600.

The appeals from the county court to the circuit court are now pending and are undisposed of, and the orders of the circuit court which the petitioners here seek to quash are interlocutory and not final, and the practice has long been settled that an appeal does not lie from such orders.

In the case of *Sanders* v. *Plunkett,* 40 Ark. 507, it was held, to quote a headnote, that "The order of a chancellor at chambers, dissolving an injunction issued by

him in vacation, is interlocutory and cannot be quashed by the Supreme Court on certiorari, nor appealed from until final judgment in the circuit court.''

In the opinion in this case Mr. Justice EAKIN, for the court, said: ''We cannot regard any mere interlocutory order of a judge at chambers, made in the cause, as final, in the sense of being subject to appeal. There must be a final order of the court itself upon the rights of the parties. Interlocutory orders are always subject to the control of the court, and remain so from term to term until a final adjudication upon the rights of the parties. Then the final order, perpetuating or dissolving them, becomes subject to appeal. The present application (for certiorari) is not an appeal.'' For these reasons the writ of certiorari there prayed was denied. See, also, *Mallett* v. *Hampton*, 94 Ark. 119, 126 S. W. 92.

The case of *Martin* v. *Hargrove*, 149 Ark. 383, 232 S. W. 596, is cited and relied upon by petitioners for the writ here applied for. That was a case in which the chancery court, on complaint of owners of land in an improvement district, had removed the commissioners, and had directed the receivers to take charge of the affairs of the district and discharge the duties imposed by law upon the commissioners. We quashed this order of the chancery court for the reason, there stated, that the court was without authority to remove the commissioners and appoint receivers in their stead. In other words, the order was void on its face.

We have here an entirely different situation. The circuit court has the undoubted jurisdiction to review the action of the county court, and this jurisdiction has not yet been exercised. It may transpire that, when this jurisdiction has been exercised, the circuit court will vacate and set aside the orders of the county court, in which event they will be as if they had never been made, and the entire subject-matter of this litigation would in that event be a mere moot question.

For the reasons stated the writ of certiorari prayed for will be denied, and the petition dismissed. It is so ordered.