# Wakefield's Appeal (No. 1).

*Elections—Nomination papers—Pre-emption of party name—Local and district offices—Act of July 9, 1897, P. L. 223.*

1. The pre-emption of a party name for state purposes does not give to the pre-emptors, or the body represented by them, the exclusive right to control the use of that name in the nominations of candidates for every local or district office.

2. Where five electors of a congressional district file with the prothonotary of their county, as required by the Act of July 9, 1897, P. L. 223, an affidavit setting forth that they had adopted the name of a certain party to designate their policy in the election of a congressman from that district; and, following this pre-emption, the nomination paper, properly signed by a sufficient number of electors, residents of the district, is filed in the office of the secretary of the commonwealth accompanied by a certificate from the prothonotary setting forth compliance with the act; and the pre-emption is first in point of time so far as the district nomination is concerned and there is a strict compliance with the act of 1897 in the preparation, signing and filing of the nomination paper; a prima facie case in favor of the validity of the nomination paper is made out and the paper is not rendered invalid by reason of its not having the approval of the political body represented by five electors who at a prior date had pre-empted the name of such party to designate their policy in the nomination of candidates for state offices.

Argued Oct. 24, 1910.  Appeal, No. 4, May T., 1911, by James A. Wakefield, from decree of C. P. Dauphin Co., Jan. T., 1911, No. 173, sustaining objections to nomination papers of James A. Wakefield as a candidate of the Keystone Party to Congress in the Thirtieth Congressional District of Pennsylvania.  Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ.  Reversed.

Objections to nomination papers.

The opinion of the Supreme Court states the case.

*Error assigned* was decree sustaining objections and declaring the nomination papers invalid.

*Charles H. Bergner, J. H. Harrison* and *B. C. Tunison* of Florida, for appellant.

*James A. Stranahan*, with him *William H. Sponsler*, for R. J. Black, appellee.

PER CURIAM, January 3, 1911:

A majority of the court are of opinion that there should be a reversal in this case and that the nomination paper of appellant be declared valid.  The nomination paper was filed agreeably to the requirements of the proviso to sec. 1 of the Act of July 9, 1897, P. L. 223.  Appellant complied with every provision of the act by which the regularity of his nomination paper must be tested.  Five electors of his congressional district filed with the prothonotary of Dauphin county, as required by the act, an affidavit setting forth that they had adopted the name of the Keystone party to designate their policy in the election of a congressman from that district.  Following this pre-emption, the nomination paper objected to in this case, properly signed by a sufficient number of electors residents of the district, was filed in the office of the secretary of the commonwealth accompanied by a cer-

tificate from the prothonotary setting forth compliance with the act. The pre-emption was first in point of time so far as the district nomination was concerned and there was a strict compliance with every requirement of the act in the preparation, signing and filing of the nomination paper in question. This makes out a prima facie case in favor of its validity. It, however, is contended that it does not have the approval of the political body represented by the five electors who at a prior date had pre-empted the name of the Keystone party to designate their policy in the nomination of candidates for state officers, and by reason thereof the nomination paper is invalid. There is nothing in the act which requires such approval and such a construction would necessitate reading into it provisions not contained therein. The pre-emption for state purposes does not empower the five electors who made it, or the political body for whose protection it was made, to either make or approve district nominations. The people of local districts are jealous of their right to nominate and elect candidates of their own choice and in matters affecting the locality would not willingly surrender that choice to those in control of the body representing the party policy for state purposes. If the five original pre-emptors for state purposes, or the political body represented by them, have the power to approve and disapprove nominations for local and district offices, the hands of the local people would be so effectually tied as to deprive them of the valued privilege of making their own nominations and of voting for the candidates of their own choice. When the legislature intends to make such a radical departure from the policy of allowing the people to select their own candidates for local offices, the language expressive of such intention should be so plain as to leave no doubt about its meaning. The language of the act of 1897 does not stand this test. The position sustained by the learned court below is that the pre-emption of the party name for state purposes gave to the pre-emptors, or the body represented by them, the

exclusive right to control the use of that name in the nomination of candidates for every local or district office. In other words that the electors of a district could not nominate a candidate for the legislature, or the senate or congress, or for any other local office, without the approval of those who originally pre-empted the name for state purposes. This gives to the act a broader scope than any reasonable construction of its provisions warrant. Section 1 of this act authorizes nominations to be made by nomination papers, signed by qualified electors of the state, or of the electoral district or division thereof for which the nomination is made. If the nomination be for a state office the number of signers must be at least one-half of one per cent of the largest vote for any officer elected in the state at the last preceding election; if for a district office, two per cent of the largest entire vote for any officer elected in that district at the last preceding election. Thus it clearly appears that nominations by separate nomination papers must be made for each class of offices. If the nomination is for a state office, the pre-emption is for that purpose; if for a district office, the pre-emption is for the district. One pre-emption does not cover or include the other. The act in express words provides for a separate nomination paper and a separate pre-emption for each class of offices. What the act requires must be done. In the organization of a new party more or less confusion necessarily arises. Five electors pre-empt a party name for state offices and this is followed by filing nomination papers naming the candidates. This starts the movement with the right to the exclusive use of the name pre-empted and with the nomination of persons desired as candidates. It is the foundation upon which the new party structure rests. If it be deemed expedient or desirable to strengthen the new party movement by making nominations for district offices, it is necessary to have electors of the local district pre-empt the name for that district and to sign the necessary nomination papers for such candidates as they may prefer.

The original pre-emptors for state purposes have no authority to make district nominations, nor can they do indirectly, by exercising the power of approval or disapproval, what they cannot do directly. District nominations must be made by the electors of the district as the law provides. When two or more nomination papers are filed for the same office in the same district the courts must decide which one is valid. In such cases many questions arise, such as priority of pre-emption, good faith of pre-emptors, and whether trick, artifice or fraud has been practiced. In the present case questions of this character are not involved. There is no allegation of fraud or misrepresentation and the pre-emption upon which appellant relies has the priority in point of time. His papers are regular and were properly signed and filed. He did not have the approval of the state body representing the Keystone party and this the law does not require. We therefore hold that the nomination paper of appellant is regular and valid. The order to this effect has already been made and is of record.