## In re Shipman's Nomination.

*George Ross Hull*, for objections; *Samuel M. Shipman*, contra.

HARGEST, P. J., October 10, 1930.—On September 4, 1930, Samuel M. Shipman filed nomination papers in the office of the Secretary of the Common-

wealth purporting to nominate him as a candidate of the Liberal Party for the office of member of the House of Representatives of the United States for the Seventeenth Congressional District of Pennsylvania. James S. Penman, who says that he is "a qualified elector of the Seventeenth Congressional District of Pennsylvania and a member of the Liberal Party in said district," filed objections on the ground that the objector, with five associates, preëmpted the name of "Liberal Party" for the general election to be held on November 4, 1930, for the office in question by filing in the office of the Prothonotary of Dauphin County the affidavit required by section three of the Act of June 10, 1893, P. L. 419, as last amended by the Act of July 9, 1919, P. L. 855, 25 PS § 972, and that the preëmptors, therefore, have the right to the exclusive use of that name. No certificate from the prothonotary showing such preëmption was filed with the Secretary of the Commonwealth either by the preëmptors or by Shipman with his nomination papers. Shipman thereupon filed a motion to dismiss the objections on the ground that Penman did not give his definite address nor the names and addresses of his associates who were the preëmptors and that he alone, without the joinder of his associates, has no standing to file objections.

There is no merit in the motion to dismiss. Penman has alleged that he is a qualified elector of the district and a member of the Liberal Party; and if it were necessary to state his precise address, his objections would be amendable in that particular. In so far as the motion to dismiss goes to the failure to state the names and addresses of his associates, it is a sufficient answer to say that the preëmption affidavit is on file and, therefore, affords public information of the names and addresses. As to the proposition that all of the associates who preëmpted the name must be objectors, there is even less merit. It has always been held, at least since Judge Stewart, specially presiding in this court, so declared in 1898, that "the right to challenge the demand of a political party to have its ticket placed on the official ballot belongs to every qualified voter, and does not depend upon any special or peculiar interest:" Citizens' Party Nomination, 1 Dauph. 328. So, if a voter may challenge the right of a political party, he certainly may also challenge the right of a few individuals to place the name of a candidate upon the ballot. Not only the candidate, but the party or body of citizens that nominated him, has an interest in the names upon the ballot: Hudson v. Martin, 1 Dauph. 340. While it may be that only a member of a party can successfully object to the nominations of party candidates at the primaries: Winston Borough Nomination, 2 Lacka. Legal News, 13; it is settled that any qualified elector may question the legality of such nominations for the general election: Independence Party Nomination, 208 Pa. 108, 115. In any event, the objector in this case alleges that he is a member of the party for whom the nomination has been filed. We, therefore, overrule the motion to dismiss the objections.

The persons who preëmpted the name of "Liberal Party" for the purpose of making nominations in this district did not make any nomination. The question, then, arises whether, after preëmpting a name, the preëmptors can secure the exclusive right to such name and prevent its use by any other persons, although they file no certificate of such preëmption in the proper office and make no nominations.

Section four of the Act of June 10, 1893, P. L. 419, as amended by the Act of July 9, 1897, P. L. 223, 25 PS § 973, provides, inter alia: "All certificates of nomination and nomination papers shall specify: One (1). The party or policy which said candidate represents, expressed in not more than three words."

Section three of the same act, as last amended by the Act of July 9, 1919, P. L. 855, 25 PS § 972, provides, *inter alia*, as follows:

"Provided, That if five of the electors composing any political body making a nomination by nomination papers shall file, with the prothonotary of the county in which the nomination paper or papers are to be filed, an affidavit setting forth that they have adopted a certain political appellation to designate their policy, subject to the limitations of this act regarding the selection of names, that thereafter such political body shall have the exclusive right to use the said name or appellation for the election for which such nomination or nominations are made, provided that a certificate from the prothonotary setting forth such a compliance with the act be filed with the nomination papers filed by such political body."

In Wakefield's Appeal (No. 1), 229 Pa. 581, it is held that a general preemption of a party name for state purposes does not require the approval by the preëmptors for state-wide offices of nominations for district offices. Such preëmption does not give to the preëmptors the exclusive right to control the use of that name in nominations of candidates for any local district office. This is so even though there is a district nomination and a state-wide preemption certificate is filed with such nomination.

In Wakefield's Appeal (No. 2), 229 Pa. 585, where the approval of the preemptors for state-wide offices was obtained but the required certificate was not filed with the nomination papers, it is held:

"The nomination of a candidate for congress by any party must be made by electors of the congressional district, and if the nomination be made by nomination papers there must be a strict compliance with the requirements of the act or acts governing the same. In one particular, at least, appellee failed to make this requirement. The act provides that a certificate from the prothonotary setting forth that five electors had pre-empted the party name for the office to be filled in accordance with the requirements of the law, must be filed in the office of the secretary of the commonwealth with the nomination papers. This was not done and the nomination paper filed was irregular in this respect."

In these cases there was an attempt by state-wide preëmptors to ratify and approve district nominations and thus use the preëmpted name. In the instant case there is no attempt to use it but an attempt to prevent its use by others.

There are clearly three methods of nomination under the law: (1) by an existing party; (2) by filing nomination papers by an individual not connected with an existing party; and (3) by the method of preëmption provided by the statute above quoted: Guise's Nomination Paper, 10 D. & C. 507. In each instance, section four of the act above quoted requires a party or policy of not more than three words to be specified in the nomination papers.

In Fowler's Nomination, 27 Dauph. 289, 292, we said:

"This Act of Assembly gives to the people who comply with its terms an extraordinary privilege in that they have the exclusive right to use the name or appellation preëmpted for the election for which a nomination or nominations are made. This Act of Assembly must be strictly construed. Wakefield's Appeal (No. 2), 229 Pa. 585, 586; Barnes' and Heydrick's Nominations, 4 Dauph. 201, 203, 10 Dist. Rep. 681; Drake's Nomination, 40 C. C. 126."

In Seward's Nomination, 4 Dauph. 197, Judge Simonton said, with reference to the Act of 1897 which provided the method by which a group or party might protect the name: "If it does not use this method we think we are powerless to aid it." Where there has been no preëmption affidavit filed, an

individual has a right under the statute to file nomination papers adopting a certain political appellation: Hamilton's Nomination Papers, 7 D. & C. 523; Guise's Nomination Paper, 10 D. & C. 507. But the question before us is whether an individual may file nomination papers adopting a certain political appellation where there has been a preëmption affidavit filed but the right to make nominations under it abandoned.

In Cramer's Nomination Papers, 2 D. & C. 46, there was a preëmption affidavit filed adopting the name of the Citizens' Party and "among the persons nominated by nomination papers by this party was J. Howard Cramer" without filing a certificate with the nomination papers. It was held that such nomination papers were void. We quite agree with the decision in this last-cited case, to the extent that persons who preëmpt the name cannot secure the exclusive right to the name without doing all the things which the statute requires.

In Barnes' & Heydrick's Nomination, 4 Dauph. 201, 203, it is said:

"The proviso to the act makes the right to the exclusive use of the name depend upon the filing of the certificate setting forth a compliance with the act. . . . The Socialist Party filed no affidavit claiming an exclusive right to use that name or appellation for the election for which these nominations are made, nor did it file with the nomination papers a certificate from the prothonotary that such affidavit was theretofore made and filed by it or in its behalf, and the preference or exclusive right to use this political appellation vanishes with this omission."

But the respondent here does not contend that he has an exclusive right to the use of this name. In Fowler's Nomination, *supra*, we held that where a candidate filed his nomination papers before the preëmption the subsequent preëmption would not preclude his right to use the appellation which he had selected. It goes without saying that if, in this case, where the preëmption was made before the nomination papers were filed, the political body had properly made a nomination, Shipman's papers would have to be declared invalid.

However, does any fair interpretation of the act lead to the conclusion that where the name is preëmpted and abandoned the preëmptors, without making a nomination or filing a certificate of the preëmption affidavit in the office of the Secretary of the Commonwealth, can, by the act of filing the affidavit alone, prevent individual electors from nominating Shipman under that appellation? The statute provides that "if five of the electors composing any political body making a nomination by nomination papers shall file" the affidavit, such body may secure the exclusive right. What do the words "making a nomination" indicate? Can they indicate anything else than that the exclusive right is to use the name for the purpose of "making a nomination?" Do they not also indicate that the exclusive right is not to be obtained where a nomination is not made? But this is not all. The statute provides that "such political body shall have the exclusive right to use the said name or appellation for the election for which such nomination or nominations are made." Of course, the exclusive right is for that particular election, but here, again, the language is "for which such nomination or nominations are made." Can this mean anything else than that nominations are to be made in order to secure the exclusive right? The statute makes the further proviso "that a certificate from the prothonotary setting forth such a compliance with the act be filed with the nomination papers filed by such political body." The exclusive use is, therefore, given, provided a certificate is filed "with the nomination papers." The act does not say "provided a certificate be filed,"

but the certificate is to be filed with nomination papers, which again clearly indicates an exclusive right to make nominations; not an exclusive right to prevent everybody else from making nominations when the preëmptors intend to make none. This act is an enabling act. It confers an extraordinary privilege. It is not to be construed so as to make it hard for the electors to make nominations, but when an exclusive right is to be given to a certain class of electors the act must be strictly construed. In our opinion, the statute requires three things to be done before the right to the exclusive use of a name may be secured: (1) the filing of the preëmption affidavit with the prothonotary, (2) the making of a nomination, and (3) the filing of a certificate with the nomination papers in the proper office. The preëmptors in this case have done only one of these things. Shipman, not claiming an exclusive right to the use of the name, is not required to file the affidavit of preëmption or the certificate of such filing with his nomination papers, which the statute makes a prerequisite only to the exclusive right.

We, therefore, conclude that the mere filing with the prothonotary of a preëmption affidavit, without more, cannot operate to secure the exclusive right to use the name thus attempted to be preëmpted when no nomination has been made and when the intention to nominate has been abandoned, and where no certificate has been filed in the office where the nominations are required to be filed. It, therefore, follows that the nomination papers of Samuel M. Shipman are valid. For these reasons we made the order heretofore filed.  From Homer L. Kreider, Harrisburg, Pa.