## In re Ostroff et al.

*Earl V. Compton,* for objectors.

*John C. Kelly,* contra.

*Adrian Bonnelly,* Deputy Attorney General, and *Charles J. Margiotti,* Attorney General, for Commonwealth.

HARGEST, P. J., September 26, 1936.—Arnold M. Blumberg and Morris J. Root, averring that they are qualified electors of the third representative district of Pennsylvania, residing at 430 Pine Street and 763 South Fifth Street, in the City of Philadelphia, object to the nomination papers of Isidor Ostroff and Harry P. Voldow as candidates of the Royal Oak Party for the offices of representative in the General Assembly for said district. Ostroff and Voldow have filed an answer. The facts are not disputed.

It appears that on July 23, 1936, Peter Penico, Jr., and four other persons, filed an affidavit in the office of the prothonotary of this county for the purpose of preëmpting the name "Royal Oak Party" for the third representative district in the County of Philadelphia for the election to

be held on November 3, 1936. On August 26, 1936, another affidavit executed by five different electors was filed in the prothonotary's office, setting forth that these electors and their associates had adopted the appellation of "Royal Oak Party" for said election of representative in said district. On the same day, August 26, 1936, nomination papers containing the signatures of those who signed the second preëmption affidavit, and their associates, were filed in the office of the Secretary of the Commonwealth purporting to nominate Ostroff and Voldow as the candidates of the Royal Oak Party for the office of representative in the General Assembly in said district. On September 1, 1936, nomination papers signed by Penico and his associates, containing the qualified number of electors, were presented to the Secretary of the Commonwealth purporting to nominate Arnold M. Blumberg and Morris J. Root as the candidates of the Royal Oak Party for representatives in the said district.

The Secretary of the Commonwealth, having received and filed the first paper purporting to nominate Ostroff and Voldow, refused to receive the nomination papers purporting to nominate Blumberg and Root.

The present objectors, Blumberg and Root, also filed a petition in mandamus against the Secretary of the Commonwealth to no. 155, Commonwealth docket, 1936, to require him to receive and file the nomination papers presented to him purporting to nominate them. The Secretary of the Commonwealth answers that, inasmuch as there are only two offices to be filled and the nominations were made for those two offices by the first nominating papers received and filed by him, he is without power to receive the second nomination papers.

The question in this case is whether the exclusive right to make a nomination for a new political party is secured by those who first file affidavits preëmpting such party name; or to those who having filed a subsequent preëmp-

tion affidavit of the name first filed nomination papers in the office of the Secretary of the Commonwealth.

Section 5 of the Act of June 10, 1893, P. L. 419, as last amended by section 1 of the Act of July 9, 1919, P. L. 832, 25 PS §974, provides that nomination papers for candidates for certain offices, including representatives in the General Assembly "shall be filed with the Secretary of the Commonwealth at least sixty days before the day of election." The duty of the officer to whom nomination papers are presented for filing is defined by section 6 of the Act of 1893, supra, as last amended by section 2 of the Act of July 9, 1919, P. L. 832, which provides as follows:

"It shall be the duty of the officer or officers to whom any nomination paper is brought for the purpose of filing, to examine the said paper, and if it lacks sufficient signatures or be otherwise manifestly defective, it shall not be filed; but the action of said officer or officers in refusing to receive such paper may be reviewed by the court of common pleas of the county, upon an application for mandamus to compel its reception as of the date when it was brought to the office."

The statutory provision for preëmpting a party name and making a nomination under such name is found in the proviso in section 3 of the Act of 1893, as last amended by section 1 of the Act of July 9, 1919, P. L. 855, as follows:

"Provided, That if five of the electors composing any political body making a nomination by nomination papers shall file, with the prothonotary of the county in which the nomination paper or papers are to be filed, an affidavit setting forth that they have adopted a certain political appellation to designate their policy, subject to the limitations of this act regarding the selection of names, that thereafter such political body shall have the exclusive right to use the said name or appellation for the election for which such nomination or nominations are made, provided that a certificate from the prothonotary setting

forth such a compliance with the act be filed with the nomination papers filed by such political body".

The preëmption affidavit filed by Penico and his associates on July 23, 1936, supporting the nomination papers of the objectors, was offered in evidence.

It was objected to on the ground that the instrument was not identified as to its execution or the identity of the persons or their right as electors or citizens to execute it. If by that is meant that there must be some proof, outside of the affidavit itself, that the affiants are qualified electors of the districts or members of the party the name of which they preëmpt, the answer is that the statute does not require it. The act of assembly just quoted provides the only method and sets out the only qualification necessary for five electors to file such an affidavit. The five signers have sworn to the paper. It is therefore an affidavit. They aver that they are "qualified electors residing in the Third Representative District of the County of Philadelphia of the State of Pennsylvania" and that they "have adopted the name of the 'Royal Oak Party.' " There is nothing in the statute requiring them to give their precise addresses: Shipman's Nomination, 34 Dauph. 89, 90. It is also objected that the signers of the earlier preemption affidavit do not allege that they had authority from the other members of the Royal Oak Party to make the preëmption. Again the answer is that there is no such requirement in the statute, and it may be noticed that the second preëmption affidavit in these respects is subject to the same criticism. They have met all the qualifications prescribed by the act. The objection to the admission of the affidavit is overruled.

Respondents contend that the objections are invalid because the objectors do not aver that they are "the representatives, agents, attorneys or even members of the Royal Oak Party." They do not need to be of the same political party: Independence Party Nomination, 208 Pa. 108.

The question which immediately confronts us is: What is the effect of the filing of a preëmption affidavit? The preëmptors contend that when an affidavit preëmpting a party appellation is regularly filed those preëmptors and their associates have, until the last day for filing, the right to make nominations. As against that respondents and the Secretary of the Commonwealth contend that there are three steps necessary to make a nomination: (*a*) The filing of a preëmption affidavit; (*b*) the filing of nomination papers, together with (*c*) a certificate from the prothonotary showing the preëmption affidavit filed, and that the parties who take all of these three steps first get the exclusive right to the use of the name.

In order to secure the exclusive right to a party appellation there must be a strict compliance with the provisions of the act: Wakefield's Appeal (No. 2), 229 Pa. 585; Shipman's Nomination, supra.

In Wakefield's Appeal (No. 1), 229 Pa. 581, 584, it is said:

"In the organization of a new party more or less confusion necessarily arises. Five electors preëmpt a party name for state offices and this is followed by filing nomination papers naming the candidates. This starts the movement with the right to the exclusive use of the name preëmpted and with the nomination of persons desired as candidates. It is the foundation upon which the new party structure rests."

In Shipman's Nomination, supra, this court held that filing a preëmption did not prevent a nomination under the same appellation where, after the time for filing nominations, the preëmptors had made none and therefore abandoned their right to the exclusive use. Under the statute it is plain that the filing of the affidavit must precede the filing of the nomination papers, because a certificate of the filing of the preëmption affidavit must accompany the nomination papers when filed with the Secretary of the Commonwealth, and where nomination papers have been filed the exclusive right to such name cannot be had

by attempting to amend them by filing a certificate from the prothonotary nunc pro tunc: Cramer's Nomination Papers, 2 D. & C. 46.

In Fowler's Nomination, 27 Dauph. 289, we held that a certificate of preëmption could not relate back and be considered as filed with nomination papers which were in fact filed the day before. So the order of the several steps under the statute is: The filing of the affidavit, the filing of the nomination papers, and, with them, the filing of the certificate of the prothonotary.

It is contended, however, that the language of the statute does not bear that construction. The language is: "That if five of the electors composing any political body making a nomination . . . shall file . . . affidavit . . .". It is urged that the word "making" indicates that the nomination should be made first. The process of "making" may be going on, in that signatures to papers or consent of candidates are being secured. All this may have been done, but the process need not be completed— the papers need not be filed—until 60 days before the election. We think the word "making" is used in the sense of "intending to make".

When a proper affidavit is filed, the act provides "that thereafter such political body shall have the exclusive right to use the said name or appellation for the election". In our opinion this language is clear, and if by the filing of the affidavit the preëmption secured "the exclusive right" how can five other persons by filing a similar affidavit afterwards take away that exclusive right and acquire it themselves? What does the word "thereafter" mean? There is nothing in the act which requires the nomination to be made "immediately" or "promptly" thereafter. The preëmptors are given "the exclusive right to use the said name or appellation for the election for which said nomination" is made. The right to make a nomination for Representative is given up to "sixty days before the day of election." Can there be any reasonable interpretation put upon the word "thereafter"

except that it means "thereafter," as long as nominations can be legally made?

We can find no reasonable basis for the contention that the preëmptors lose their rights by not immediately filing or concurrently filing nomination papers, with the certificate accompanying them. Such a proceeding, even if justified by statute, would result in an unseemly scramble.

In the case of Strasselly's Nomination, heard by the court with this case, it appeared that the preëmpting affidavit of the objector was filed to no. 1568, June term, 1936, and another preëmption affidavit attempting to preempt the same name was filed to no. 1580, June term, 1936, later on the same day, September 4, 1936, but the second set of preëmptors filed their nomination papers with the Secretary of the Commonwealth on that same day, about two or three hours before the first set of preemptors tendered theirs for filing.

The evidence in this case shows some preëmption affidavits come by mail. Let us assume that a preëmption affidavit came by mail and was duly filed, but shortly thereafter a preëmption affidavit for the same name and office was filed in person by one who also had in his possession nomination papers and who immediately secured the prothonotary's certificate and rushed with the nomination papers and accompanying certificate to the office of the Secretary of the Commonwealth. Can it be possible that the legislature intended to provide for any such scrambling results? And yet that is precisely the position to which the contention of the Secretary of the Commonwealth and these respondents leads.

The objectors, having been nominated by those who secured the exclusive right to use the name "Royal Oak Party" for the nomination of representative in the General Assembly in this district within the time allowed by law for making such nomination, it follows that the nomination is valid, and for the reasons given in the opinion filed herewith in Blumberg et al. v. Lawrence, Secy., 27

D. & C. 564, the Secretary of the Commonwealth should have received such nomination papers.

It further follows, the first preëmptors having secured the exclusive right, that the preëmption affidavit filed by those attempting to nominate Ostroff and Voldow as candidates of the Royal Oak Party is invalid, and the objections to the nomination papers filed by them must be sustained.

Now, September 26, 1936, the nomination papers purporting to nominate Isidor Ostroff and Harry P. Voldow as candidates of the Royal Oak Party for the office of representative in the General Assembly from the third representative district of the County of Philadelphia are hereby declared invalid, and the prothonotary is hereby directed to certify this judgment to the Secretary of the Commonwealth.